Good morning everyone. Starting this morning with number 2007-1265 Poweroasis against T-Mobile. Mr. Reppin. Thank you, Your Honor. This case involves the issue of priority as to one specific limitation of Claim 1. And the issue is whether or not it's entitled to the filing date of the parent application, which is the 643, became the 643 patent. The specific limitation involved is an element of Claim 1. It's in Claim 1B as we have styled it. And it is, quote, a customer interface for indicating the status of said vending machine. And this is, by its terms, a generic limitation. Under the rules established by this court, if Claim 1B had been included in the parent application back in 1997 and construed by one of ordinary skill back in 1997, it would not correctly have been rejected for lack of support. And therefore, it is entitled to priority. In other words- But that doesn't necessarily mean that when it's construed in the context of litigation, it would be construed in the way it's now construed with the benefit of the additional disclosure. The issue is, yes, that's probably correct. The later claim is filed in the context of a different specification that includes embodiments that are not expressly disclosed in the initial application. But that doesn't change the rule. As long as the initial application provided a disclosure of a user interface, as one of ordinary skill would have understood that term back in 1997, that's all that has to be shown for priority to be established. All right. I want to be sure that you're not saying that if, in fact, it were concluded that the claim was supported by the first filing, that that ends the case as far as infringement is concerned. No, infringement's a different issue. We're talking about priority for purposes of whether or not they have met their burden of proving invalidity on the basis of an intervening anticipatory reference. No, I was talking about claim construction. Yes, claim construction for purposes of validity is different from the type of claim construction that's applicable for determining whether or not we are entitled to priority. And the claim construction we're talking about is one that would have occurred on the basis of one of ordinary skill back at the time of the parent application. Looking at the parent application back in 1997, the issue is, does it disclose what was later claimed? And in this case, what Judge Barbara Dorough of the District of New Hampshire has done is essentially applied the wrong test. He compared the earlier claims in the claim to a display in the initial application to the later specification. And under the rules established in the two cases we primarily rely on, which are the Ralston-Purina case and the Phillips Petroleum case, United States Steel case, that's clearly the wrong standard. The comparison has to be between what's actually claimed, what's claimed in the case in suit, a generic user interface. And did the inventors at the time of the initial application to which we seek priority have the concept of a user interface? And if they did, then we're entitled to priority back to that date. Perhaps so, but of course, and this is the issue as pressed by your opponent as well, I suppose that if in fact the claim is construed so that it encompasses and embraces the accused infringing device, and that's the issue of litigation, is it appropriate to look at it in that context? Yes, Your Honor. The context of resolving the dispute. That's precisely the issue that was raised in the United States Steel case. That involved later developed technology, but the same rule has to apply. In other words, the issue of claim construction with reference to the disclosed embodiments in the later specification goes to the breadth of the claim. And in the United States Steel case, the defendant was taking the position that there was no support because the claim was broader in light of the new embodiments that were included in the later file specification. The district court in that case said, no, that's not right, and Judge Markey, in his opinion, and the court at that time, this court, affirmed the district court. So it's not an issue of the breadth of the claim. It's an issue of whether the claim as written has support from the point of view of one of ordinary skill in the initial application. It's a direct application. There's also similar holding in the Ralston-Purina case, the Farr-Mark v. Farr-Marco. The same standard is actually quoted in the United States Steel case. Counsel, how would you like the court to construe the words customer interface? Well, customer interface has been agreed upon. It means an interface that enables information to be passed between a human user and hardware or software components of a system. The parties have agreed to that. It's referred to on page 65 of the appendix, and the judge reflected that in his opinion. So there's really no issue as to how that is how one of ordinaries, that's the ordinary meaning of interface. And it's clear from the context of customer interface, which is the same as a user interface. And it's clear from the context and specification of the initial application, the inventors had that idea. They disclosed a user interface in generic terms. So when the word user interface was changed to be customer interface, it's your assertion that there is no difference in claim scope between those two words. Then why did you change the word? Well, the initial, it's synonym. The user is the customer. So it's the same difference. Initially there was a claim to a display. But that's not, the issue is not what the claims were in the initial application. It's whether the specification of the initial application supports the later file claim. The later file claim just says user interface. Now, farther down the road, there are dependent claims. There's a claim 15, which really, really what Judge Barbadaro did. But counsel, do you want the customer interface to be broad enough to cover a display on customer's laptop as opposed to on a stand-alone vending machine? Yeah, for purposes of infringement, yes. There's no difference between purposes of infringement and purposes of validity, right? I mean, the construction is the construction. Well, no, that's not correct, Your Honor. The construction for purposes of validity is, there's two different periods of time we're talking about. And this is where the judge got, I think, respectfully mixed up. The first time is from the point of view of one of ordinary skill back in 1997. What would someone have understood the term user interface to mean? And that's different from the construction that occurs at the time after the new patent issues. Counsel, you would agree, wouldn't you, that the claim construction that the words customer interface are given right now, that claim construction has to be identically used for validity and for infringement purposes? Yes. And there's an agreement as to what that term means. The only issue is how broadly can it occur on a laptop or not? That's really the subject matter of Claim 15, which is a dependent claim. And it's not spelled out. Claim 1 is. Wait. You suggest that customer interface ought to be construed broadly enough to include a display on a laptop. Yes. Okay. Now, where is your support in the specification in the original filed application for showing the inventor's possession thereof? Well, firstly, we don't have to show that. I'm asking. But anyway, where is the support? There's plenty of evidence in the form of there's three or four statements in the abstract, in the summary of the invention. Bring me right to them. That would really be helpful. Okay. The first one is the abstract refers to providing information on the progress of the vending machine to the customer via the user interface. Which patent are you on? This is 643 patent. I'm quoting page A118 in the appendix. It's on the abstract at the bottom. Now, where in the abstract? Next to the last sentence from the end. The central control unit provides information on the progress of the vending transaction to the customer via the user interface. How does that suggest an interface that could be located on the customer's laptop? Because it's one of ordinary skill. They have admitted, T-Mobile has admitted, that it was well known in the art that a user interface can occur on a computer. And so we had no obligation. A user interface could occur on a computer, but a user interface in the context of this invention, as you disclose it in the specification, is the issue. Yes, that's correct. A user interface, as of the sort disclosed generically here, could occur. That was well known. Where did T-Mobile, just so I want to make sure I'm with you, because I don't want to lose any of this. Where did T-Mobile admit that a user interface in the context of this invention was well known to be located on a laptop? In their argument that the United States Steel case did not apply because it involved later developed technology. And they tried to say that we had argued that United States Steel was applicable to this case. And they said, well, this case doesn't involve later developed technology. It involves technology that was known. And so they admit that, and they say, we can't seriously dispute that it was known that a user interface at the time of this invention could occur on a laptop or other computer. That, in fact, is what the term interface means. A GUI interface was well known, graphic user interface. And Mr. Morley, our expert witness, whose affidavit was incorrectly disregarded, completely disregarded, rather derogatory terminology. Do you think no new matter was added to this application when it was modified? We don't believe the new matter is a loaded term. They're additional. I'm just trying to figure out why you called it a CIT and added all the language to the spec if it was unnecessary. It was just additional clarification of the existing invention. In other words, new matter is a loaded term. It means it's not supported. And why did you call it a CIP, though? I mean, continuation in part implies, right, doesn't it, that some of the matter in this patent is entitled to the original filing date and some of the matter is not? But the inquiry is whether— So which part's not? You tell me which part's not. We think that there is support for every one of the claims in the later filed case. And why did you call it a CIP? Well, I don't exactly—I'm not the patent attorney in the case. All I can say is that that's not determinative whether it's called a CIP or not. It doesn't automatically mean it's new matter. I think the Payless Accounting case says that, as I remember. Just because it's called a CIP, it is not an admission that it is, quote, new matter, which means it's not entitled to the priority date. It has this factual inquiry. And what they've done—what the judge did is he prevented us from the opportunity of opposing their motion by means of an affidavit from an expert because he kind of summarily dismissed all expert affidavits as lies, essentially. And that's not—that was incorrect. That was—he also improperly placed the burden on us to prove that there was an inadequate disclosure. That's also contrary to the law of this circuit. Well, I don't think he placed the burden on you with regard to whether there was an inadequate disclosure. Didn't he place the burden on you with regard to priority? Well, it's the same difference. In order to get priority, we have to show that the—well, the issue is whether there's an adequate disclosure. Let me make sure I understand your argument on this point. Your argument, as I understood it, was that because there's a presumption of validity, and this is in the context of a challenge to validity, written description, it shouldn't be your burden to prove priority. It's not our burden to prove that there was inadequate disclosure in the parent specification. That's black letter. That's what it says in the Ralston-Perina case. In that case, the defendant—I mean, the defendant argued that they didn't have the burden, and the court—this court said, no, you do have the burden. And Judge Barbadaro got that wrong. But on this theory of the case, noting that there was no charge of infringement of the parent patent when it issued, that's significant, is it not? Well, we chose—we had a variety of tactical reasons why we didn't—we chose to sue under the patent that it just issued. We were seeking a preliminary injunction at the time. You wouldn't have this problem at all. We could have asserted a claim under the initial patent. You didn't. But we didn't, but that doesn't mean we waived any argument that it's not entitled to. That's our choice. We're not waiving anything by not doing that. There's support in the initial application for the claims later asserted, but that doesn't mean we had, as a matter—that by not asserting that particular claim in the original patent, we were admitting anything. We weren't. We just—we were taking it from a litigation perspective that what we thought was the approach that made most sense to avoid unnecessary fights and everything else and to give us the best chance of getting injunctive relief. This issue applies in both cases, does it not? Well, they're the same patents involved. Yes. Well, then let's hear from the other side, and then we'll continue with the second case. Okay. Thank you, Your Honor. And fill in the gaps. Mr. Newman. Thank you, Your Honor. If Your Honor please, together with my partner, Amar Ali, we represent in this appeal the appellee T. Mobile. This morning, as Your Honor just noted, we're going to hear two appeals arising from the same patent, two different claim interpretations by two different judges. Under the broad claim interpretation, which Power Oasis has urged upon Judge Barbadaro and this court, Judge Barbadaro concluded that under that broad claim interpretation, the patent's invalid. Under the narrower claim interpretation adopted by Judge Zobel, which we advocated in both courts, she concluded that the patent was not infringed by a distributed network system. In this appeal, let me go directly first to some of the points that were discussed by Mr. Reppert with the court. First, going to Judge Moore's question, the claim construction is the same. The Lizard Tech case from this court makes clear that when you're looking at the question of whether there's an adequate written description under Section 112 for a claim, it's the full scope of the claim as construed. So Judge Barbadaro got it correct, which was having construed it broadly at their urging, having relied almost actually having read exclusively on material new matter that was added in June 2000. Is there an adequate written description of that claim as construed? It has to be the same. The 643 patent is not relevant to that inquiry, and that's one of the court problems with Mr. Morley's analysis. The 643 patent is not asserted. It's not asserted for a reason. It's not asserted because without that additional new material in June 2000, you could never have urged upon a court a claim construction as broad as that adopted by Judge Barbadaro. In fact, if the court focuses on the user interface, there are very specific references in the spec, and I'd like to draw the court's attention to just a few of them to respond to the specific question about where is the discussion. At page A130 of the appendix, at column 6, lines 28 to 29, and lines 59 to 62, the user interface is specifically described, it's on the vending machine. At page A131 at column 8, lines 52 to 53, the user interface is described, it's on the vending machine. But if we wanted a specific example, if the court looks at figure 5 of the patent, figure 5 of the patent was in the original application. It is a figure that describes a vending machine which is connected to a laptop. The user face is specifically identified as number 510. So there's no doubt that they knew about a laptop. There's no doubt that they described it. And in the specific embodiment in claim in figure 5, item 510 is the user interface. That is what's described in claim 15. And claim 15 actually, I think, makes our point. Claim 15 in the dependent limitation that's added reads as follows. Quote, customer interfaces comprises a mechanism that interfaces with user software supplied by the customer. That's what's disclosed in figure 5. You have a user interface, a customer interface. That customer interface is on the vending machine, item 510, and it can interface with a user's laptop. That's what's described. In this particular situation, Judge Barbadaro, having adopted the broad claim interpretation, was correct in concluding that that then became the priority date. We've provided the court at pages A157 to A176 a highlighted version of the application that highlights in yellow all the material that was added in June 2007. In adopting the broad claim construction, Judge Barbadaro relied exclusively upon that material. But he also did more. When we got to summary judgment, he specifically turned to Power Oasis lawyer and said, tell me, is there a specific disclosure that identifies a customer interface as being located on the customer's computer? He asked just the question that Judge Moore asked Mr. Rippert. There was an answer at page A227, and it was no. And that answer is correct. There is no specific disclosure of a user interface located on a customer's laptop. And in fact, the judge concluded, Judge Barbadaro concluded that he could not find any reference to a user interface or a customer interface located on the customer's laptop at any time before June of 2000. Now, Power Oasis, relying upon the Phillips case, has made an argument that they disclose a genus of user interfaces and the user interface on the laptop is a species. This is not a genus species case. This is a question under 112 of whether the full scope of the claim, whether there is a written description of the full scope of the claim. It is a lizard tech case. It is a gentry gallery case. And in that context, Judge Barbadaro applied the correct test and correctly concluded that there wasn't a sufficient disclosure. Counsel, can you respond to Power Oasis' claim that T-Mobile admitted that customer interface or user interface, as one of ordinary skill in the art would understand the term, included this? Your Honor, that's not what we said. What we did say was that having a laptop in which a user could interface with was known technology. That's true. Figure 5 shows that. The question then becomes, was there a written, was there an adequate written description of the concept of having that user interface be part of the claimed invention? We never admitted that. There was a discussion among us, between us, as to whether an interface on a laptop was old or new technology. That, as Your Honor will see from the briefs, that was engendered by the fact that Power Oasis has moved back and forth in positions. At one point it was new technology, therefore not disclosed. Then it became old technology that was disclosed. We did say it's old technology. But we say it's not disclosed. And that's why, Your Honor, it's a Section 112 written description issue. But even if you were to analyze it in genus-species terms, it's really species-species. The species that was disclosed in the original application was a user interface on the machine. In June 2000, they tried to broaden it to a user interface on the customer's laptop. It seems to me that it can just as well be described as when the technology advances, such that the specific advance was not available or wasn't sufficiently developed to be described in the first filing. Nonetheless, the concept is the same. And under 112, you don't really need to have the specific application, later-developed applications, in order to defeat the scope of the initial disclosure if, in fact, that same scope is involved in the later-developed technology. Does that make sense? Your Honor, it does if this were a later-developed technology case. And it's not. This is a case looking at Figure 5 that shows you that the inventors knew of a laptop. Well, if it's not later-developed, then would there not be an inference that, considering that the language is broad enough on its face to include this interface, why shouldn't it be interpreted that way? Your Honor, if the disclosure were just user interface, you might be able to draw that conclusion, but it's not. The user interface is a specifically described part of a single unitary device. So in some senses, Your Honor, in Lizard Tech, what the court dealt with was methods of compression, and there was a method of compression disclosed, but other known methods were not. And the court construed the claim broadly to encompass all methods of compression, but then said that there was no disclosure to show that they had possession of an invention of that breadth. But there's this long history of cases developed through the CCPA, particularly that you don't have to put in your specification. Everything that's known or every patent application would turn into a physics textbook. That's 100% true, Your Honor. But another example the court's dealt with is the center console in Gentry Gallery. I mean, center consoles were known. Just as laptops were known. Your Honor, this court has said on many occasions that many inventions, in fact, most inventions, are a combination of what's old put together to new and useful purposes. When you're doing that, a generic disclosure of something old for a specific purpose should not and cannot be broad enough to cover any use of what's old, even that which is not disclosed. Maybe not any, but part of their argument, as I read it, was that this isn't so different as not to be included in the plain language. And, Your Honor, it is different enough. And I would say these three things. First, when the court considers, again, the specific references to a user interface, you will find that it's quite different. It's a user interface on a single unitary machine. Second, if it were broad enough to cover that, there would be no reason to have added everything that they added in June of 2000 to specifically attempt to describe something that was not on that machine. And the third, Your Honor, is that in this circumstance, there's not a broad generic description. There is a very specific description that's consistent with a specification that has vending machine 80 times, every user interface disclosed as an integral component of that. And then when the court considers claim 15, when they mention software on the customer's laptop, it is something separate from the user interface. And that's why Judge Barbadaro was correct in reaching his conclusion. Once he reached his broad claim interpretation, he was correct in finding that on these facts and in this circumstance, there was not an adequate written description. Mr. Morley's declaration, we would suggest, doesn't require a different result. And, Your Honor, this, I think, goes in part to your question. His entire discussion is at paragraph 16, which is at A389. And he has just a two-sentence conclusion. And it goes to Your Honor's question in this manner. He said that it would have been obvious from the disclosure to one of ordinary skill in the art to have a user interface on the customer's laptop. Therefore, I conclude that there was adequate written description and they were in possession of the invention. That, Your Honor, not seeking to have every specification be a physics textbook, that, Your Honor, is not what the law is. This court, both in Lockwood and Houston, has said for 112 purposes, because what we're dealing with is public notice and the adequacy of that public notice, the question is, does the written description communicate to one of ordinary skill in the art that they were in possession of that invention? Does that original application communicate that these inventors were in possession of a customer interface that could be separate from the vending machine claim and on the customer's laptop? The fact that it might have been obvious to one of ordinary skill in the art is not relevant to that inquiry, and that's the problem with the only paragraphs that they rely upon. Well, counsel, in Mr. Morley's declaration, which I'm looking at his opinion, it doesn't suggest to me that he's saying it would have been obvious. I'm reading it on page A389 and A390. I quite honestly found some fault with the district court's characterization of Mr. Morley's opinion. I didn't think that he suggested what you just characterized it as, which is identical to what the district court characterized it as, so you're in good company. Nonetheless, you're not right. Your Honor, let me at least tell you what I'm relying upon to make my conclusion. It's not simply Judge Barberdaw's characterization. The key sentences are on page A390. It was well known to those of ordinary skill as of February 6, 1997, that the functionality of providing information to a customer via a user interface can be provided by displaying information on a computer screen, and it goes on. That is talking not about what was disclosed in the disclosure, but what would have been well known to one of ordinary skill in the art. So while I characterized it as saying what was obvious, I think that this sentence falls within Houston and Lockwood when someone's talking not so much about what is actually disclosed or how one of ordinary skill in the art would read what was actually disclosed, but instead what was well known. And if Your Honor, the case as the court's decided in this context deals with things such as if you're describing circuits, you don't have to describe wires and connections and that sort of thing because that is the kind of thing that one of ordinary skill in the art reading the specification would know. But here we're dealing with something more than a wire or a connection. We're dealing with one of the six components of the claim, a key component of the claim, a disclosure that puts it in a very specific spot and no disclosure that puts it elsewhere. And that is the difference. And that's why I think if Judge Barbadaro's characterization of it, I actually agree with, but I think that, Your Honor, under Lockwood and Houston, those two sentences, which are the only two, don't create a genuine issue of material fact on written description. Thank you, Your Honor. Okay. Thank you, Mr. Lee. Let's proceed formally with a rebuttal for this case and then we can go straight into the next case. Okay. Thank you, Your Honor. Just to go to Mr. Morley since he was where we ended just now. The sentence before then on page A390, the one before Mr. Lee quoted part of, reflects that he referred specifically to the specification of the 643 patent repeatedly referring to user interface and broadly describes it both functionally and with reference to numerous embodiments. So it's not correct to say that he was just saying it was obvious. He looked specifically at the specification. It's a factual issue. This is a fact-intensive inquiry. They bear the burden of proof. They made no factual showing. Their own expert admitted he had no opinion on this subject. The only affidavit out there or declaration is Mr. Morley's. He's saying one of ordinary skill would have, you know, he's making a conclusion here, would have understood that this was a concept known by the inventors. And they can't just say, oh, forget about it. The fact of the matter is this is evidence they haven't met their burden and certainly there shouldn't be summary judgment. Maybe it should go to trial. But this is a fact issue and the Vascaff case is an example of one of the cases in our brief where there was an affidavit, unrebutted affidavit. Summary judgment was denied for that reason. And there's another unpublished opinion I have in there also saying basically the same thing. Also, Mr. Lee is summarizing what's disclosed in the 643 specification. He refers to some specific embodiments. There are actually three different specific embodiments that are disclosed. There's colored lights, there's a video display unit, which incidentally is the functionality of a computer, a video display unit with a keyboard and with a printer. Those are all different embodiments of an interface that he talks about, they talked about at the time of the initial invention. But he doesn't pay any attention to the three or four references to a generic user interface and to the depiction of that generically in figure four, which just says this component is, all this invention has to have to meet this claim is it has to have a user interface. User interface is clearly a generic concept. It's his argument that it's not generic, I don't understand that. Also, even if we didn't disclose a generic interface in our apparent application, it's well settled that disclosures of specifics can support a later claimed generic interface, but that's really not our case here. Here we have a generic claimed interface at the time of the patent in suit, supported by a specification including embodiments not expressly disclosed in the prior parent specification, but the generic interface that is disclosed is claimed itself. The actual claim is supported by the broad statements of a user interface in the parent application. Essentially what the judge has done is he's limited the scope of claim 1B to include or require something that it doesn't. It doesn't require claim 1B just says user interface. It doesn't say user interface on a laptop, that's claim 15. He's effectively conflated claims 1 and 15 and treated claim 1 as if it says the same thing as claim 15. The key is what it actually says. What it says is user interface, that's supported, that gives us priority, and then the issue of infringement depends upon claim construction in the claim as issue, which we get to in the next case. So I guess that basically covers the points I wanted to make in response, and I guess we can move to the next case if Your Honor would like us to do that. Yes, let's turn to the next case, which is number 2007-1369, Power Oasis against Wayport.